IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:21-CR-141-CCW |
| v. | |
| KWAME EDDINGS, | |
| Defendant. | |

## MEMORANDUM ORDER ON DEFENDANT'S PRETRIAL MOTIONS

Defendant Kwame Eddings is charged by Superseding Indictment with possession with intent to distribute quantities of cocaine base, cocaine and a mixture containing heroin and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

On October 4, 2021, Mr. Eddings filed multiple pretrial motions (the "Pretrial Motions"), which are now pending before the Court.[1]  *See* ECF Nos. 42, 44, 48, 50, 53, 55, 57 & 59.  On October 19, 2021, the United States filed an Omnibus Response to Mr. Eddings' motions.  ECF No. 62.  On October 26, 2021, Mr. Eddings filed a Reply to the United States' Omnibus Response. *See* ECF No. 68.  The Court held an evidentiary hearing on Mr. Eddings' Motion to Dismiss Fruits of Search – Warrant Illegally Executed, ECF No. 44, on November 9, 2021.  ECF No. 74. Accordingly, Mr. Eddings' motions are now ripe for adjudication.

---

[1] Defendant's Motion to Dismiss the Indictment, ECF No. 46, was denied as moot on October 26, 2021, *see* ECF No. 73, due to (1) the filing of a superseding indictment, *see* ECF No. 63, and (2) Defendant's Reply acknowledging that motion as moot.  *See* ECF No. 68.

## I.      Pretrial Motions Regarding Discovery

### a.  Mr. Eddings' Motion for Disclosure of Brady Materials (ECF Nos. 42 & 43)

Mr. Eddings' Motion for Disclosure of Brady Materials asserts that the United States possesses material impeachment, exculpatory, or otherwise favorable evidence that has not been disclosed to Mr. Eddings, and he therefore requests disclosure of specific listed information with respect to "any and all witnesses who will testify at trial."  ECF No. 42 ¶ 3.[2]

The United States responds that this motion is premature because the United States is aware of its obligations and responsibilities under *Brady v. Maryland*, 373 U.S. 83 (1963), and intends to provide any *Brady* information that may exist (and has not already disclosed) at a time consistent with any pretrial order that this Court may impose.  ECF No. 62 at 1.

In *Brady*, the Supreme Court held that due process requires the disclosure of "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to

---

[2] Specifically, Defendant "requests the following specific information with regard to any and all witnesses who will testify at [the] trial of this case:

a.   The military history including but not limited to, the type of discharge and the reasons therefore, of all government witnesses and confidential informants[;]
b.   Plea bargains executed with such witnesses or confidential informants who will testify;
c.   Grants of immunity given to any and all witnesses or confidential informants who will testify;
d.   Promises made to any and all witnesses or confidential informants who will testify;
e.   Preferential treatment tendered or actions undertaken on behalf of, either directly or indirectly, any and all witnesses or confidential informants who will testify;
f.   "Rap" sheet of any and all witnesses or confidential informants;
g.   Any statement of any such witness or informant which is inconsistent with the witnesses' or informants' expected trial testimony;
h.   Any statement or statements of others which is contradictory to or inconsistent with the expected testimony of such Government witness or witnesses or informant, regardless of whether the Government intends to call that person as a witness at trial;
i.   Any offers of immunity, lenience, or preferential treatment made to any potential witnesses or informants or to a defendant in this matter;
j.   Monies advanced to or on behalf of any and all witnesses or confidential informants who will testify at trial; and
k.   Any recorded conversations, in whatever form, that were obtained in this case but do not contain any incriminating information or contain denials by Mr. Berry that he was engaged in illegal conduct."

ECF No. 42 ¶ 3(a)-(k).

punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "Evidence which may be used to impeach the testimony of a government witness falls within the ambit of *Brady* when the credibility of the witness may have an effect on the jury's determination of guilt or innocence." *United States v. Beech*, 307 F.R.D. 437, 441 (W.D. Pa. 2015) (Cercone, J.); *see Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *see also United States v. Starusko*, 729 F.2d 256, 260 (3d Cir. 1984). The prosecution has an obligation to disclose *Brady* material "in time for its effective use at trial." *Beech*, 307 F.R.D. at 441–42 (citing *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983)). In this case, the prosecution has acknowledged its obligations and responsibilities with respect to *Brady* and its progeny and has agreed to comply with any pretrial order that this Court may impose. ECF No. 62 at 1. The Court has not yet set this case for trial, but will set a deadline for the disclosure of *Brady/Giglio* material in its pretrial order.

Accordingly, Mr. Eddings' Motion for Disclosure of *Brady* Materials is **DENIED** without prejudice as premature.

### b.  Mr. Eddings' Motion for Early Disclosure of *Jencks* Material (ECF Nos. 51 & 52)

Mr. Eddings' Motion for Early Disclosure of *Jencks* Material seeks an order requiring the United States to provide him, "not less than 14 days before trial of this case, [with] all written or oral statements commonly referred to as 'Jencks' material." ECF No. 52 ¶ 2. Mr. Eddings asserts that the Court in "its inherent supervisory powers[,] has the authority to override the time provisions set forth in the [Jencks] Act and in Rule 26.2." ECF No. 51 at 1–2.

The United States responds that this motion is premature, because disclosure of material pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3500, the Jencks Act, is required only *after* direct testimony is provided. However, the United States indicated that

it "will voluntarily provide, disclosure of Jencks Act materials, as well as the witness criminal histories, sufficiently in advance of trial to ensure that unnecessary interruptions or delays are avoided." ECF No. 62 at 3.

Under the Jencks Act, after a government witness has testified, and upon motion by the defendant, *see* 18 U.S.C. § 3500(a), the government must produce "any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b); *United States v. Weaver*, 267 F.3d 231, 245 (3d Cir. 2001). "A plain reading of the [Jencks Act] demonstrates that there is no basis upon which the court can order the government to provide investigative statements as Jencks material prior to the time a witness has testified on direct examination at trial." *United States v. Portis*, Crim. No. 2:19-133-7, 2020 U.S. Dist. LEXIS 226975, at *5–6 (W.D. Pa. Dec. 3, 2020) (Horan, J.) (emphasis added); *United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012).

Although Mr. Eddings asserts that Rule 26.2 does not contain "language explicitly precluding the disclosure of witness statements prior to trial," *see* ECF No. 51 at 2, Rule 26.2 does not alter "the delivery schedule of the Jencks Act." *See United States v. Litman*, 547 F. Supp. 645 (W.D. Pa. 1982) (Cohill, J.) (stating that defendant's argument that Rule 26.2 altered the delivery schedule by "effectively repealing" the Jencks Act is "clearly erroneous").

Nevertheless, the Third Circuit has recognized that "[d]espite [§ 3500(a)], many federal prosecutors routinely turn over Jencks material a few days before the witness testifies." *Maury*, 695 F.3d at 248 n. 18. Because "[t]he government has no obligation to produce Jencks material until the witness has testified," *Maury*, 695 F.3d at 248, Mr. Eddings' Motion for Early Disclosure of Jencks Material is **DENIED**. However, the Court encourages, but does not compel, the United States to provide any material that falls within the ambit of the Jencks Act to Mr. Eddings

4

sufficiently in advance of trial.  Specifically, pursuant to the Court's typical pretrial order in criminal cases, the United States is encouraged to provide all Jencks Act materials prior to the final pretrial conference.

### c.  Mr. Eddings' Motion to Preserve Rough Notes (ECF Nos. 53 & 54)

Mr. Eddings' Motion to Preserve Rough Notes seeks an order that all rough notes by federal and state investigative/enforcement officers be preserved pending a determination as to whether they are discoverable.  ECF No. 53 ¶ 2.

The United States responds that it has advised its agents regarding the preservation of the notes and writings of investigating agents and that such material will be disclosed to the extent it constitutes *Brady/Giglio* and/or *Jencks* material.  ECF No. 62 at 3–4.

Independent of the United States' direction to its agents regarding the preservation of such material, the United States Court of Appeals for the Third Circuit requires the United States to retain rough notes and writings.  *United States v. Hanner*, Crim No.  2:05-cr-385-2, 2007 U.S. Dist. LEXIS 11805, at *4 (W.D. Pa. Feb. 20, 2007) (McVerry, J.).  In *United States v. Vella*, the Third Circuit held that "rough interview notes of [law enforcement officers] should be kept and produced so that the trial court can determine whether the notes should be made available to the defendant" under *Brady v. Maryland* or the Jencks Act.  562 F.2d 275, 276 (1977).  In *United States v. Ammar*, the Third Circuit expanded the category of what must be retained to include draft reports.  714 F.2d 238, 259 (3d Cir. 1983).  As such, "the government must retain … both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced."  *Id.*;  *United States v. Harris*, Crim No. 2:19-cr-313, 2021 U.S. Dist. LEXIS 87629, at *3–6 (W.D. Pa. May 7, 2021) (Horan, J.).

Mr. Eddings' Motion to Preserve Rough Notes is **GRANTED**.  It is hereby **ORDERED** that all law enforcement officers and agents who investigated the charges contained in this case are to retain and preserve all rough notes and drafts of reports which are arguably discoverable by Mr. Eddings or subject to disclosure.

### d. Mr. Eddings' Motion to Compel Government to Provide Mr. Eddings with Written Statement of Uncharged Misconduct Evidence and/or Federal Rule of Evidence 404(b) Evidence and For Pretrial Production of Such Evidence (ECF Nos. 59 & 60)

Mr. Eddings' Motion to Compel seeks an order requiring the United States to produce "a written statement of any uncharged misconduct evidence and/or Federal Rule of Evidence 404(b) evidence and [an] order [requiring] the Government to produce such evidence for inspection" by Mr. Eddings' counsel.  ECF No. 59 at 2.  Mr. Eddings contends that "waiting for trial for disclosure of [uncharged misconduct and/or evidence described in Rule 404(b)] will materially delay the trial" and the Court "should exercise its discretion and require the Government to disclose its intention to use any such evidence prior to trial."  ECF No. 60 at 1.

The United States responds that Mr. Eddings' Motion to Compel should be denied as premature and moot because the United States "intends to comply with Rule 404(b) by giving reasonable notice of its intent to use such evidence," and that the "the timing of such notice [will] be relative to an actual trial date in this case."  ECF No. 62 at 4.  The United States also asserts that to the extent any prior conviction would be relevant, the United States "intends to comply with the written notice requirement within a reasonable time period" under Rule 609 and notes that Mr. Eddings has a copy of such information.  *Id.*  Finally, the United States asserts that a "pretrial evidentiary hearing should not be necessary to determine the admissibility of potential Rule 404(b) evidence…. [because such determination] often requires trial context."  *Id.*  at 4–5.

In *United States v. Stanko*, Crim. No. 2:18-cr-334, 2021 WL 2349392 (W.D. Pa. June 9, 2021) (Hornak, C.J.), the district court recently explained:

> Under Federal Rule of Evidence 404(b), the Government shall "provide reasonable notice of any [evidence of other crimes, wrongs, or acts offered to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident] that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." Under the recently amended version of that Rule, the Government must also "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B). The purpose of this pretrial notice requirement is to "reduce surprise and promote early resolution on the issue of admissibility." *United States v. Blackwell*, 954 F. Supp. 944, 968 (D.N.J. 1997) (quoting *United States v. Williams*, 792 F. Supp. 1120, 1133 (S.D. Ind. 1992)). "What constitutes 'reasonable notice in advance of trial' is determined by the circumstances and complexity of the prosecution." *United States v. Underwood*, No. 17-00324, 202 WL 5107558, at *1 (W.D. Pa. Aug. 31, 2020) (quoting *Williams*, 792 F. Supp. at 1133). As for Federal Rule of Evidence 609, this rule requires that the Government provide notice to a defendant of its use of a conviction older than ten years as impeachment evidence with enough time so "that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b)(2).

*Stanko*, 2021 WL 2349392, at *15.

Because (1) the trial date has not yet been scheduled, (2) the United States has indicated its intention to comply with the reasonable notice requirements under Federal Rules of Evidence 404(b) and 609, and (3) this Court's pretrial order will address the timeline for disclosures under Federal Rule of Evidence 404(b) and any motions in limine regarding admissibility of such evidence, Mr. Eddings' Motion to Compel is **DENIED** without prejudice as premature.

## II.   Pretrial Motions to Suppress

Mr. Eddings' four remaining motions request either the suppression or exclusion of evidence due to alleged deficiencies in the issuance and execution of a Pennsylvania State Police search warrant, *see* ECF Nos. 44, 45, 55, 56, 57, & 58, or the dismissal of the resulting federal

charges, *see* ECF Nos. 48 & 49.[3]  The search warrant at issue, which contains a probable cause affidavit, was issued on March 16, 2021 and authorized a search of the residence located at 327 Shelton Avenue in Brownsville Borough in Fayette County, Pennsylvania, which was executed on March 17, 2021.  ECF Nos. 44-1, 55-1, 57-1; ECF No. 44 ¶¶ 1, 4;  ECF No. 45 at 1; ECF Nos. 44-1 at 1.

Evidentiary hearings on motions to suppress are not granted as a matter of course.  *See* Fed. R. Crim. P. 12(c)(1).  In evaluating whether a motion to suppress requires an evidentiary hearing, the Third Circuit has established that an evidentiary hearing is required only "if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress."  *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010).

### a.   Mr. Eddings' Motion to Dismiss Fruits of Search – Warrant Illegally Executed (ECF Nos. 44 & 45)

In this Motion, Mr. Eddings challenges one specific component of the execution of the search warrant giving rise to his federal charges – the time of day that it was executed.  Specifically, on March 17, 2021, the Pennsylvania State Police executed a search warrant at the residence located at 327 Shelton Avenue in Brownsville Borough in Fayette County, Pennsylvania.  ECF No. 44 ¶¶ 1, 4;  ECF No. 45 at 1;  ECF No. 44-1 at 1.  Mr. Eddings' Motion contends that "[d]espite the time limitation [6:00 a.m. and 10:00 p.m.] set forth in the warrant, the police executed the search warrant prior to 6:00 a.m. on March 17, 2021."  ECF No. 44 at ¶ 4;  ECF No. 45 at 1.  As such, Mr. Eddings asserts that the search was outside the scope of the warrant, and therefore is

---

[3] As further described below, even if the "Motion to Dismiss the Indictment" is considered as a "Motion to Suppress," Defendant's arguments still fail.

constitutionally invalid.  ECF No. 44 ¶¶ 4-7;  *see also* ECF No. 45.  In his Motion, Mr. Eddings requested a hearing.  ECF No. 44.

In its Omnibus Response, the United States indicated that testimony from the investigators would confirm that the search did not begin until 6:00 a.m., and that even if the officers knocked before 6:00 a.m., this would not render the search *per se* or presumptively invalid.  ECF No. 62 at 9–10.

Having concluded that there was a disputed issue of "material fact that will affect the outcome of the motion to suppress," *see Hines*, 628 F.3d at 105, the Court held an evidentiary hearing on this Motion on November 9, 2021.  ECF No. 75.  The United States called three witnesses:  Rebecca Fabich, corporal with the Pennsylvania State Police, Ryan Mates,  Tactical Paramedic with Mutual Aid Emergency Medical Service, and Sean Samsa, Trooper with Pennsylvania State Police.  The Court admitted three government exhibits, without objection:  (a) a Pennsylvania State Police Special Emergency Response Team Event Log dated March 17, 2021, through Rebecca Fabich (Exhibit 1);  (b) a Fleet Complete "Breadcrumbs Trail" for a vehicle dated March 17, 2021, through Ryan Mates (Exhibit 3);  and (c) a photo of the living room at the search location, through Sean Samsa (Exhibit 2).  ECF Nos. 76, 77.  For the defense, Mr. Eddings testified and no additional exhibits were offered for admission.  ECF No. 76.  "As a general rule, the burden of proof is on the defendant who seeks to suppress evidence.  However, once the defendant has established a basis for his motion,… the burden shifts to the government to show that the search or seizure was reasonable."  *United States v. Johnson*, 63 F.3d 242 (3d Cir. 1995) (internal citations omitted); *see also United States v. France*, 414 F. Supp. 3d 747, 754−56 (W.D. Pa. 2019) (Hornak, C.J.) (noting that a Court may "easily" conclude that defendant met "the initial burden of establishing a basis for his motion" when "[t]here is no dispute that the officers' initial entry …

occurred without a warrant.").  "The controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."  *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974);  *see also*, *United States v. Hanner*, No. 02:05cr0385-02, 2007 U.S. Dist. LEXIS 36296 (W.D. Pa. May 14, 2007) (McVerry, J.) (noting that because defendant had "not carried his burden to establish that he had a legitimate reasonable expectation of privacy … he is foreclosed from challenging the warrantless search").  At a suppression hearing, the Court reviews the "credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence."  *United States v. Leveto*, 343 F. Supp. 2d 434, 442 (W.D. Pa. 2004) (Cohill, Jr., J.).

Based on the testimony and evidence presented at the suppression hearing, which entailed credibility determinations by the Court the Court will deny Mr. Eddings' Motion, because the Court finds by a preponderance of the evidence that the search of 327 Shelton Avenue was executed at a time after 6:00 a.m.

### i.    Testimony of Rebecca Fabich

First, the United States called Corporal Rebecca Fabich of the Pennsylvania State Police. The Court had the opportunity to observe Corporal Fabich's demeanor, and found her to be credible.  Corporal Fabich testified that she has worked for the Pennsylvania State Police (PSP) since 1998, and has worked as part of the PSP's Special Emergency Response Team, known as "SERT," since January 2019.  She testified that SERT's role during the execution of a search warrant is to conduct the entry and secure the premises.  She further testified that she was familiar with daytime and nighttime search warrants and that SERT does not enter a house prior to 6:00 a.m. unless it is a night search warrant.  She testified that the March 17, 2021 warrant for 327 Shelton was a daylight search warrant.

Prior to executing a search warrant, Corporal Fabich testified that SERT plans the execution of the search, which includes determining the route and the time it takes to get from the briefing location to the target, in this case, from PennDOT shed in Brownsville to 327 Shelton Avenue. Corporal Fabich testified it takes approximately six minutes to go from the PennDOT shed in Brownsville to 327 Shelton Avenue.

Corporal Fabich testified that on March 17, 2021, she was assigned to the "Command Post" and made contemporaneous entries of the events that took place by recording them on the PSP SERT Event Log. The PSP SERT Event Log dated March 17, 2021 was admitted into evidence as Government Exhibit 1. Corporal Fabich testified that a pre-deployment team surveils the target location prior to the arrival of the units that will execute the search, however, the pre-deployment team does not enter the target. Corporal Fabich testified that she records in the PSP Event Log radio transmissions received from the pre-deployment team, although she is not on site at the target at the time the pre-deployment team is there. The PSP Event Log entry for March 17, 2021, Gov. Ex. 1, states that the pre-deployment team left the PennDOT shed at 4:28 a.m. and was on site at 4:35 a.m. Corporal Fabich testified that at 5:57 a.m., a five-vehicle caravan, which included the command post, tactical van, medics, and other vehicles, was deployed to the search location. She traveled to the search location as part of this caravan. This deployment is also listed in the PSP Event Log entry, Gov. Ex. 1.

Corporal Fabich testified that after the caravan arrived at the search location, her role was to remain in the vehicle and record, in the PSP Event Log, the radio transmissions that were received. She further testified that from her position in the vehicle, she was able to see the front of the residence which was to be searched. She testified that, upon the caravan's arrival at the residence at 6:03 a.m., announcements were made and a "flash bang" was deployed, both of which

she recorded in the Event Log, Gov. Ex. 1.  Corporal Fabich testified that when entry was made, she looked at her cellphone to see if the minute number changed from three to four, which it had. She testified that she recorded that entry was made into the residence at 6:04 a.m., which is shown in the Event Log entry.  She testified that she did not see anyone entering the residence prior to documenting that entry was made at 6:04 a.m. in the Event Log.

ii.    **Testimony of Ryan Mates**

The United States also called Ryan Mates, Tactical Medic.  The Court had the opportunity to observe Mr. Mates' demeanor and found him to be credible.  Mr. Mates testified that he has worked with Mutual Aid ambulance services for 26 years, as a paramedic for 25 years, and as a tactical medic for SERT for 20 years.  He testified that he was working with SERT on March 17, 2021 and was involved with the execution of the search warrant at 327 Shelton Avenue.  Mr. Mates testified that his role is to provide the first line of medical response in case of injury during the execution of a search warrant.  Mr. Mates testified that, on March 17, 2021, for the search of 327 Shelton Avenue, he drove an unmarked, 2012 black Chevy Suburban that is equipped with any medical equipment he may need for his paramedic work.  He further testified that the vehicle contains a "Fleet Complete" system, which tracks the vehicle through satellite technology and is installed into the car's OMB port by a mechanic or an IT person.  Mr. Mates testified that the "Fleet Complete" system automatically records the approximate GPS position of the vehicle at a given time.  Per Mr. Mates, the data regarding a vehicle's location and time is maintained for one year.  Mr. Mates testified that Government Exhibit 3 is a Fleet Complete "Breadcrumbs Trail" showing information for the vehicle he was driving (labelled as "Mobile 1" on the "Breadcrumbs Trail") on March 17, 2021 as part of SERT for the search of 327 Shelton Avenue.  The "Breadcrumbs Trail" exhibit indicates the approximate GPS position, time, speed, and direction

12

the vehicle was traveling, along with whether the ignition was on, and whether there was a GPS signal. Mr. Mates testified that the vehicle was not moving on March 17, 2021 when it was located at U.S. 40, Brownsville, which Mr. Mates testified was the PennDOT shed where staging for the search was taking place. The "Breadcrumbs Trail" shows that the vehicle was moving at 5:58:12 a.m. Mr. Mates testified that he was the second to last or last vehicle in the caravan that was traveling to the search location. The "Breadcrumbs Trail" indicates that the vehicle was in motion until at least approximately 6:03 a.m. Mr. Mates testified that although the "Breadcrumbs Trail" indicates that the vehicle was stopped at 359 Shelton Avenue (not 327 Shelton Avenue) at 6:04 a.m., the GPS uses the approximate street address. He further testified that he could see the execution of the search from where his vehicle was stopped. The "Breadcrumbs Trail" indicates that the vehicle remained stopped from 6:04:41 a.m. until 6:14:41 a.m., at which time the vehicle left the search location because SERT had completed its role. On cross-examination, Mr. Mates testified that the pre-deployment team would not have entered the residence, but he was not on site with the pre-deployment team to observe them.

### iii.   Testimony of Sean Samsa

Finally, the United States called Trooper Sean Samsa of the Pennsylvania State Police. The Court had the opportunity to observe Trooper Samsa's demeanor and found him to be credible. Trooper Samsa testified that he has worked for the Pennsylvania State Police for seven and a half years and that he has worked with the Vice/Narcotics Unit for a year and a half. He further testified that he was the affiant of the affidavit for the March 16, 2021 search warrant for the residence at 327 Shelton Avenue, and he was involved in the execution of the search warrant. He confirmed that the warrant authorized a daytime search. Trooper Samsa testified that the pre-planning was done several days before the execution of the search warrant and such planning includes

establishing a pre-set route from the briefing site to the target. He testified that it takes approximately six to eight minutes to go from the briefing site to the target and that the units conducting the search had planned to arrive at 6:00 a.m. He also testified to his understanding that the entry into the search location for a daytime warrant cannot begin prior to 6:00 a.m. He testified that he met with SERT at the PennDOT shed approximately 30 to 45 minutes prior to the execution of the search warrant. He testified that minutes prior to 6:00 a.m., he drove with the SERT caravan to the search location. Trooper Samsa testified that upon arrival at the target he could not see the front door of the house, but heard the flashbang at approximately 6:03 or 6:04 a.m. Trooper Samsa testified that he entered the house after SERT secured the residence. He testified that he took a photograph of the living room, which was admitted as Government Exhibit 2, which had an analog clock indicating approximately 5:30. Trooper Samsa testified that he took the picture at approximately 6:30 a.m.

### iv.    Testimony of Kwame Eddings

Mr. Eddings testified that on March 17, 2021, he was in the residence at 327 Shelton Avenue. The Court had the opportunity to observe Mr. Eddings' demeanor and found him to be credible during his testimony. He walked into the kitchen for soup when he suddenly felt a pressure, heard a boom, and hit his head on a wall. Mr. Eddings testified that he heard persons enter his kitchen, heard persons say put your hands up, and was handcuffed. He heard one of the persons in the house say the words, "Time 458." On cross examination, he stated that he did not see the time on a cellphone, watch, stove clock, or other analog clock. He also testified that he was not aware of any codes that law enforcement might use.

14

### v. Analysis

The Court finds by a preponderance of the evidence that the search of 327 Shelton Avenue was executed at a time after 6:00 a.m.

First, the "Breadcrumbs Trail," Gov. Ex. 3, demonstrates that Mr. Mates' vehicle was moving no earlier than 5:58 a.m., and remained moving until at least approximately 6:03 a.m., on its way to the search location. These entries align with the times recorded Corporal Fabich's PSP SERT Event Log, Gov. Ex. 1, indicating that the SERT caravan left the PennDOT shed staging area to travel to the search location at 5:57 a.m. and arrived at the residence at 6:03 a.m.

While none of the three witnesses for the United States were part of the pre-deployment team that was at the exterior of the search location prior to the team executing the search warrant, both Corporal Fabich and Mr. Mates testified that the pre-deployment team would not have entered the residence. Further, all three of the witnesses testified that the search took place after 6:00 a.m.

With respect to Exhibit 2, which is a picture of an analog clock indicating 5:30 in the living room of the search location, the Court during the evidentiary hearing took judicial notice, without objection, of the fact that daylight savings occurred on March 14, 2021, three days prior to March 17, 2021. The Court notes that analog clocks must be changed manually and that it is reasonable to infer that after the time "sprang forward" by one hour on March 14, 2021, the analog clock in the photo simply had not been reset.

For purposes of this Motion, the Court finds credible Mr. Eddings' testimony, including that he heard the words "Time 458." However, his testimony is not sufficient to show, by a preponderance of the evidence, that the search was conducted prior to 6:00 a.m., particularly because he did not present any specifics about who made the statement "Time 458," or what that statement was in relation to, and in light of his acknowledgment that he could not see the time on

15

any timekeeping device (either a cell phone, a kitchen oven clock, or a kitchen analog clock).  Nor did he present any corroborating testimony by another witness regarding the time the search occurred.  Conversely, the government presented three witnesses who testified credibly that the search warrant was executed after 6:00 a.m., along with exhibits reflecting real-time recording of events surrounding and including the execution of the search warrant.

Because the Court finds that the search of 327 Shelton Avenue was executed at a time after 6:00am, Mr. Eddings' Motion to Dismiss Fruits of Search – Warrant Illegally Executed is HEREBY **DENIED**.

### vi. Mr. Eddings' Motion to Suppress Fruits of Search Pursuant to *Franks v. Delaware* (ECF Nos. 55 & 56)

In this Motion, Mr. Eddings contends that certain statements in the affidavit of probable cause supporting the March 17, 2021 residence search are false, and that therefore fruits of the search must be suppressed.  ECF No. 55 ¶¶ 3–6;  ECF No. 56 at 1–2.  Mr. Eddings requests a hearing on this Motion pursuant to *Franks v. Delaware*.  ECF No. 55 at 2.  First, Mr. Eddings challenges the following statement:  "[t]he information contained in this affidavit is personally known by your affiant or has been provided by other law enforcement officials."  ECF No. 55 ⫫ 3; *See* ECF No. 55-1 ⫫ 2.  Mr. Eddings contends that such a statement is false because "the operative facts – that defendant was selling crack cocaine from the residence in question – came from an un-named confidential informant, not from personal knowledge, or from other law enforcement officials."  ECF No. 55 ⫫ 4.  Mr. Eddings further contends that paragraphs 4 and 9 of the affidavit, regarding crack/cocaine being purchased from the residence, were made falsely or with reckless disregard for the truth, because there "is no indication of any testing, whether by a qualified lab or even field testing, that indicated that anything allegedly purchased from the location was actually

a controlled substance," *id.* ¶ 5, and alleges "any conclusion drawn that controlled substances were purchased … is nothing more than speculation."  ECF No. 56 at 2.

The United States responds that Mr. Eddings has not satisfied the high standard required to support a *Franks* hearing.  Further, the United States asserts that there is no false statement because the affidavit is "clear as to what information is provided by the [confidential informant] to [affiant], and what role [the affiant] played in the investigation leading to the warrant."  ECF No. 62 at 11.  With respect to Mr. Eddings' argument regarding the necessity of a field or laboratory test to support a finding of probable cause, the United States asserts that Mr. Eddings provides no authority supporting this idea and further contends that probable cause existed based on the affiant's "training and experience and the facts outlined in the affidavit."  ECF No. 62 at 13–14.

"A *Franks* hearing to challenge a search warrant affidavit may only be granted if a defendant makes a 'substantial preliminary showing' that (1) 'a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Richardson*, Crim. No. 2:16-cr-139-6, 2018 U.S. Dist. LEXIS 144165, at *8–9 (W.D. Pa. Aug. 24, 2018) (Hornak, C.J.) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).  "If the defendant makes the requisite substantial showing for a *Franks* hearing and then, at that hearing, shows by a preponderance of the evidence that material statements in the affidavit are either recklessly or intentionally untruthful, the fruits of the search must be excluded unless the remaining content of the warrant is sufficient to establish probable cause."  *United States v. Brown*, 3 F.3d 673, 676 (3d Cir. 1993).

Here, Mr. Eddings cannot make the substantial preliminary showing to support a *Franks* hearing. With respect to Mr. Eddings' first argument, he has not made a substantial preliminary showing that the statement that "the information contained in this affidavit is personally known by your affiant or has been provided by other law enforcement officials" is a false statement. The information set forth in the affidavit clearly recounts the affiant's interactions with the confidential informant. The affiant stated that the confidential informant "advised that" Mr. Eddings was "selling crack/cocaine from the residence located at 327 Shelton Avenue" and "related that" the confidential informant would make arrangement to conduct a controlled buy. ECF No. 55-1 ¶¶ 6–7. The affidavit continues by describing how the confidential informant was searched and given a certain amount of Pennsylvania State Police funds, and how the affiant traveled with the confidential informant to 327 Shelton Avenue. *Id.* ¶¶ 8–9. The affidavit further describes how, after the confidential informant entered and exited the same door at that address, the confidential informant "relinquished a specific amount of crack/ cocaine" that the confidential informant "said was purchased from Kwame T. Eddings." *Id.* Because the affidavit describes the affiant's interactions with the confidential informant clearly, Mr. Eddings has not made a substantial preliminary showing that such statement is false, let alone knowingly and intentionally false, or made in reckless disregard for the truth.

Second, Mr. Eddings argues that statements in the affidavit "regarding crack cocaine being purchased from the residence were made falsely or with reckless disregard for the truth," because "no testing" "indicated that anything allegedly purchased from the location was actually a controlled substance." ECF No. 55 ¶ 5 (internal citations omitted); ECF No. 56 at 2. Here again, Mr. Eddings has not made a substantial preliminary showing to justify a *Franks* hearing, because the absence of a test confirming the presence of a controlled substance does not necessarily render

the affidavit's statements about drug trafficking from the residence false, let alone knowingly and intentionally false, or made in reckless disregard for the truth.  Mr. Eddings has not provided any legal support for his position on this issue, and his allegations of inaccuracy are conclusory.  *United States v. Yusuf*, 461 F.3d 374, 383 n.8, (3d Cir. 2006) ("[T]o make [a] preliminary showing, the defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses.");  *see also*, *United States v. Brooks*, 358 F. Supp. 3d 440, 473 (W.D. Pa. 2018) (Conti, then-C.J.).

Mr. Eddings' Motion to Suppress Fruits of Search Pursuant to *Franks v. Delaware* is therefore **DENIED**.

### vii.    Mr. Eddings' Motion to Suppress Fruits of Search – Warrant Not Supported by Probable Cause (ECF Nos. 57 & 58)

Mr. Eddings' Motion to Suppress contends that the search warrant lacked probable cause because (1) there is no indication of any testing indicating that the substance alleged purchased from the location was a controlled substance; and (2) the most important facts came from an unnamed confidential informant and the affidavit does not indicate any reliability or corroboration of information provided by the confidential informant.  ECF No. 57 ¶ 4(a)-(b);  *see also*, ECF No. 58.

The United States responds that the affidavit for the search warrant provided a substantial basis for the authorizing judge to determine that probable cause existed to search 327 Shelton Ave., because (1) the confidential informant had personal knowledge of the substance being distributed from Mr. Eddings' address and participated in a controlled buy with the affiant;  (2) the affidavit listed Mr. Eddings' prior arrests relating to controlled substances;  and (3) no testing is necessary to establish probable cause and one could reasonably assume that the affiant's experience in the

Vice/Narcotics unit of the Pennsylvania State Police would enable him to infer, based on the appearance of the substance, that the confidential informant had purchased cocaine from Mr. Eddings.  ECF No. 62 at 15–18.  The United States further contends that even if there were no probable cause, suppression is not warranted because the officers relied in good faith upon the warrant, and their reliance was objectively reasonable.  *Id.* at 19.

A federal court reviewing a warrant executed by state officers in the context of a federal prosecution must simply determine whether the warrant conforms to the Fourth Amendment of the United States Constitution.  *See United States v. Stiver*, 9 F.3d 298, 301 (3d Cir. 1993).  The Fourth Amendment forbids "unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  There is probable cause under the Fourth Amendment when the issuing authority, in considering the "totality-of-the-circumstances," makes a "practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him [or her] ... there is a fair probability that contraband of evidence of a crime will be found in a particular place."  *United States v. William*s, 124 F.3d 411, 420 (3d Cir. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In reviewing the issuing authority's determination of probable cause, this Court undertakes a deferential review that is limited to determining whether the issuing authority "had a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause."  *United States v. Miknevich*, 638 F.3d 178, 181 (3d Cir. 2011) (quoting *United States v. Jones*, 994 F.2d 1051, 1054–55 (3d Cir. 1993)).  Doing so, the Court considers only "the facts that were before the [issuing authority], i.e., the affidavit, and do[es] not consider information from other portions of the record," and the "resolution of any doubtful or marginal cases" should be "largely determined by the preference to be accorded to warrant."  *Miknevich*, 638 F.3d at 181–82 (quoting *Jones*, 994

F.2d at 1055, 1057–58);  *see also United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000)
(confining the court's review to "whether the information within the four corners of the affidavit
established probable cause").

Because confidential informants are not presumed to be credible, the government generally
must show by the totality of the circumstances either that "the informant has provided reliable
information in the past or that the information has been corroborated through independent
investigation." *Yusuf*, 461 F.3d at 385.  Mr. Eddings alleges that the affidavit "simply indicates
that this [confidential informant] has accused others of drug trafficking, not that any information
provided by the [confidential informant] has proven to be reliable or that such information has led
to the successful prosecution of other drug crimes."  ECF No. 58 at 2.  However, this argument
ignores the fact that "independent '[police] corroboration of details of an informant's tip' [is] an
important method for establishing a tip's reliability." *United States v. Stearn*, 597 F.3d 540, 555
(3d Cir. 2010) (quoting *Gates*, 462 U.S. at 241).  ECF No. 58.  The controlled buy described in the
affidavit is sufficient to corroborate the confidential informant's information. *Stearn*, 597 F.3d at
555;  *see also United States v. Sanchez*, 246 F. App'x 803, 806 (3d Cir. 2007) (noting that caselaw
has determined that a "closely supervised and controlled purchase of narcotics establishes ample
probable cause to search a residence").  Here, the affidavit describes how the confidential
informant was searched prior to the controlled buy, travelled together with the affiant to 327
Shelton Ave., entered the residence, exited the residence via the same door a short time thereafter,
"relinquished a specific amount of crack/cocaine that he/she said was purchased from [Mr.
Eddings]," and was then re-searched and found to again "be free of money and/or controlled
substances." *See* ECF No. 57-1 at ¶¶5–10.

With respect to Mr. Eddings' contention that there was "no indication of any testing indicating that the substance alleged purchased from the location was a controlled substance," Mr. Eddings has not provided, nor is the Court aware of, any authority indicating that a test confirming the presence of a controlled substance is necessary for a finding of probable cause for issuance of a search warrant.  Rather, as set forth above, the standard for the issuing authority's determination of probable cause is a "practical, commonsense decision" whether, given the "totality-of-the-circumstances" described in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Williams*, 124 F.3d at 420.  This Court's review of that probable cause determination is limited to whether the issuing authority had a substantial basis for concluding that probable cause existed. *See Miknevich*, 638 F.3d at 181.  That standard is met here.

In addition to the controlled buy, the affidavit sets out Mr. Eddings' arrest history, *see* ECF No. 57-1 at 11, which include two charges of possession with intent to distribute. *United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir. 1993) ("The use of prior arrests … to aid in establishing probable cause is . . . often helpful, … where … the previous arrest … involves a crime of the same general nature as the one which the warrant is seeking to uncover.").

Further, the affiant, based on the affidavit, is a Vice/Narcotics Investigator for the Pennsylvania State Police, who is empowered to investigate violations of the Pennsylvania Crimes Code as well as the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act of April 14th, 1992.  ECF No. 57-1.  Based on the affiant's assignment as a Vice/Narcotics Investigator, the issuing authority may reasonably conclude that the affiant was able to identify the "specific amount of crack/cocaine that [the confidential informant] purchased from" Mr. Eddings.  ECF No. 57-1 ¶ 9; *Yusuf*, 461 F.3d at 390 (citing *United States v. Arvizu*, 534 U.S. 266, 275 (2002)) (noting that

probable cause may be supported by reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences).

Taken together, the information contained in the "four corners" of the warrant affidavit provided a substantial basis for the issuing authority to believe that controlled substances were being possessed and intended to be sold/delivered from 327 Shelton Ave.  As such, the Court need not address the United States' argument with respect to executing officer's good faith reliance on the warrant.

Mr. Eddings' Motion to Suppress Fruits of Search – Warrant Not Supported by Probable Cause is therefore **DENIED**.

### viii.    Mr. Eddings' Pretrial Motion to Dismiss the Indictment[4] – Illegally Obtained Evidence (ECF Nos. 48 & 49)

In this Motion, Mr. Eddings contends that the indictment should be dismissed because the federal Drug Enforcement Administration (the DEA) allegedly obtained evidence from the Pennsylvania State Police in violation of the federal Privacy Act, 5 U.S.C. § 552a.  Specifically, Mr. Eddings asserts that this case began as a Pennsylvania State Police investigation, with no involvement by federal agencies such as the DEA.  ECF No. 48 ¶¶ 1–2; ECF No. 49 at 1.  Plaintiff further asserts that the DEA obtained evidence from the Pennsylvania State Police after the state search warrant was executed and Mr. Eddings was arrested by state authorities, and then charged Mr. Eddings federally by criminal complaint.  ECF No. 48 ¶ 3; ECF No. 49 at 1.  In Mr. Eddings' view, disclosure of certain of information by the Pennsylvania State Police to the federal DEA violated the federal Privacy Act because the Privacy Act precludes disclosure of certain personal information without a written request or authorization.  ECF No. 48 ¶¶ 4–7; ECF No. 49 at 1–2.

---

[4] In Defendant's Reply, ECF No. 68, Defendant maintained that the Superseding Indictment did not cure the issue raised in this Motion to Dismiss.

Therefore, in Mr. Eddings' view, such evidence was obtained illegally, and the indictment should be dismissed.  ECF No. 48 ¶ 7;  ECF No. 49 at 2–3.[5]

The United States responds that the Privacy Act does not apply to state agencies or individuals and because the disclosure was made by an agency of the Commonwealth of Pennsylvania, not a federal agency, any disclosure of information by the Pennsylvania State Police to the DEA is outside the scope of the Privacy Act.  ECF No. 62 at 6–7.  The Court agrees.

Under Section 552a(b) of the Privacy Act, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be [subject to 12 exceptions]." 5 U.S.C. § 552a(b).  Agency is defined in 5 U.S.C. § 551(1).[6]  *See* 5 U.S.C. § 552a(a)(1) (cross-referencing the definition of "agency" found in 5 U.S.C. § 552(f), which cites to the definition of "agency" found in 5 U.S.C. § 551(1)).  From its plain reading, the definition of "agency" does not apply to state or local agencies.  In interpreting the Privacy Act's private enforcement provisions, courts in this Circuit have found that a Privacy Act claim "cannot be brought against an individual or a state or local agency."  *Walsh v. Krantz*, No. 1:07-cv-0616, 2008 U.S. Dist. LEXIS 44204, at *19 (M.D. Pa. June 4, 2008);  *Fetzer v. Cambria Cty. Hum. Servs.*, 384 F. Supp. 2d 813, 815–16 (W.D. Pa. 2005) (Gibson, J.) (collecting Circuit cases and finding that "a careful reading of the

---

[5] Tthe Court does not find Defendant's reference to the "jurisdictional issue" compelling, as Defendant relies solely on a case from 1884 that Defendant admits is "not on point."  ECF No. 49 at 2;  *see* 18 USCS § 3231.

[6] "[A]gency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include— (A) the Congress; (B) the courts of the United States; (C) the governments of the territories or possessions of the United States; (D) the government of the District of Columbia; or except as to the requirements of section 552 of this title [5 USCS § 552]— (E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them; (F) courts martial and military commissions; (G) military authority exercised in the field in time of war or in occupied territory; or (H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49 [49 USCS §§ 47151 et seq.]; or sections 1884, 1891–1902, and former section 1641(b)(2), of title 50, appendix.

statute and an examination of decisions from other circuits indicate that [the Privacy Act] does not" apply to parties other than agencies of the federal government"); *Fiorello v. WaMu*, Civil Action No. 10-0273 (FLW), 2010 U.S. Dist. LEXIS 135590, at *28 (D.N.J. Dec. 22, 2010).

For the reasons set forth, whether Mr. Eddings' Motion to Dismiss the Indictment is construed as a motion to dismiss the indictment or a motion to suppress evidence, it is **DENIED**.

DATED this 12th day of November, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand

CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record